# UNITED STATES *v.* ANDREWS.

## APPEAL FROM THE COURT OF CLAIMS.

No. 423. Submitted October 15, 1900.—Decided November 5, 1900.

By the treaty with the Kiowa and Comanche Indians of August, 1868, the Indians agreed not to attack any persons at home or travelling, and not to molest any persons at home or travelling, or molest any wagon trains, coaches, mules or cattle belonging to the people of the United States, or persons friendly therewith; and the United States agreed that no persons except those authorized by the treaty to do so, and officers, etc., of the Government should be permitted to pass over the Indian Territory described in the treaty. In 1877 Andrews passed over the territory with a large number of cattle, travelling over the Chishom trail, the same being an established trail *en route* from Texas to a market in Kansas. He being convicted on trial for a violation of the treaty, appeal was taken to this court. *Held:*

(1) That the finding of the court below was equivalent to a finding that the trail was a lawfully established trail permitted by the laws of the United States;

(2) That as the plaintiff was lawfully within the territory, he was not a trespasser at the time his property was taken.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Thompson* and *Mr. Assistant Attorney Finn* for the United States.

*Mr. Silas Hare* for Andrews.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The claimant, Thomas C. Andrews, filed his claim in the Court of Claims against the United States and the above-named Indians to recover the value of certain cattle destroyed by the latter in June, 1877, in the Indian Territory. The claim was filed pursuant to the provisions of the act of Congress of March 3, 1891, entitled "An act to provide for the adjudication and payment of claims arising from Indian depredations,"

26 Stat. 851. The property was alleged to have been of the value of $9225.

The only defence set up was that the claimant at the date of the alleged depredation was wrongfully and unlawfully within the Indian country and was a trespasser, and therefore could not recover.

After a trial, judgment was given against the United States and the Indians for the sum of $8300, and the court made the following finding:

"In June, 1877, while the claimant, with a large number of cattle, was travelling over the Chisom trail, the same being an established trail, *en route* from Texas to a market in Kansas, and while camped on the Washita River, on the Kiowa and Comanche Indian reservation, in the Indian Territory, Indians belonging to the Kiowa and Comanche tribe of Indians took and drove away property of the kind and character described in the petition, the property of the claimant, which was then and there reasonably worth the sum of $8300.

"Said property was taken as aforesaid, without just cause or provocation on the part of the owner or the agent in charge, and has never been returned or paid for."

The Government contends that the claimant was a trespasser by reason of the provisions of the treaty between the United States and these Indians, proclaimed August 25, 1868, 15 Stat. 581, and because by section 17 of the act of 1834, 4 Stat. 729, it is provided that the liability of the Government for property taken by Indians, in the Indian Territory, shall arise only when the owner of the property taken was *lawfully* within such territory.

The second article of the treaty, after describing certain lands in the Indian Territory thereby set apart for the absolute and undisturbed use and occupation of the tribes named, provides as follows:

" And the United States now solemnly agrees that no persons except those herein authorized so to do, and except such officers, agents, and employés of the Government as may be authorized to enter upon Indian reservations in discharge of duties enjoined by law, shall ever be permitted to pass over,

settle upon or reside in the territory described in this article, or in such territory as may be added to this reservation, for the use of said Indians."

By the eleventh article it is, among other things, provided that—

" In consideration of the advantages and benefits conferred by this treaty and the many pledges of friendship by the United States, the tribes who are parties to this agreement . . . further expressly agree—

" 3d. That they will not attack any persons at home, nor travelling, nor molest any wagon trains, coaches, mules or cattle belonging to the people of the United States, or to persons friendly therewith.

\*       \*       \*       \*       \*       \*       \*       \*

" 6th. They withdraw all pretence of opposition to the construction of the railroad now being built along the Platte River and westward to the Pacific Ocean; and they will not, in future, object to the construction of railroads, wagon roads, mail stations, or other works of utility or necessity which may be ordered or permitted by the laws of the United States. But should such roads or other works be constructed on the lands of their reservation, the Government will pay the tribes whatever amount of damage may be assessed by three disinterested commissioners, to be appointed by the President for that purpose; one of said commissioners to be a chief or headman of the tribes."

The question now before us is, whether upon the facts found by the Court of Claims the claimant was lawfully within the territory at the time the Indians destroyed or took away his property.

While the Government, by the second article of the treaty of 1868, agreed that no one should be permitted to pass over, settle upon or reside in the territory described in that article, yet in the subsequent article (XI) exceptions were made. By the third and sixth subdivisions of that article the Indian tribes agreed not to attack persons or cattle, and not to oppose the construction of roads or other works of utility or necessity which might be permitted by the laws of the United States. When

they took the property of the claimant, consisting of cattle, they violated their agreement.

The finding of the court below, that the property of the claimant was taken and carried away while he was travelling in the Indian reservation, over the Chisom trail, the same being an established trail *en route* from Texas to a market in Kansas, is equivalent to a finding that the trail was a lawfully established trail permitted by the laws of the United States.

We understand that by the use in the finding of the word " trail," in connection with the balance of the finding, is meant a way, road or path suitable for the purpose of driving cattle over or along on their way to a market. In the territory named, a trail along which to drive cattle from Texas to Kansas would certainly be a work of utility or necessity within the meaning of article eleventh, subdivision six, of the treaty. It would be a road which the Government would naturally seek to provide and obtain permission to lay out or to keep in use for the convenience of its citizens who would have occasion to use it for the purpose indicated in the finding. In order to reverse this judgment we would have to presume that the court in using the words "established trail," meant a trail that was not legally or properly established; this we cannot do, nor can we presume that the trail was established by a user which did not amount to a legal user, and so did not establish a legal trail. Being properly established, it was properly used by the claimant for the purpose stated.

While the finding might have been more definite and therefore more satisfactory, yet within the well-known rules governing the construction of findings of facts by trial courts, we cannot so construe it as to render the result arrived at by the court below erroneous, when another construction much more reasonable and natural may be given it, and the judgment thus rendered valid. An established trail, in this case, means a legally established trail, and we must presume the court below so intended. The claimant was, therefore, lawfully within the territory, and was not a trespasser at the time his property was taken.

*Judgment affirmed.*